21177

James STEWART, as Administrator of the Estate of Nancy Stewart, Respondent, v. Jesse J. FLOYD, M. D., Appellant.

(265 S. E. (2d) 254)

*George C. Kosko,* of Columbia, *for appellant.*

*Henry Hammer* and *Michael A. Pulliam,* Columbia, *for respondent.*

March 27, 1980.

Rhodes, Justice:

This is an appeal by Jesse Floyd from a denial of a motion brought pursuant to Section 15-27-130, South Carolina Code (1976) to vacate a default judgment on the basis of excusable neglect, inadvertence, or surprise. We affirm.

Appellant was originally served with a summons and complaint on April 16, 1976 in which respondent James Stewart, as administrator, sought damages for the wrongful death of his daughter, allegedly caused by the negligence and wantonness of appellant, a practicing physician, in the medical

treatment of his intestate.[1] Upon receipt of these pleadings appellant immediately had them hand delivered to both his personal attorney and his malpractice insurer.

Respondent's counsel subsequently discovered that the jurisdictional limits of the Richland County Court, where the action had been inadvertently instituted, had been grossly exceeded by the amount of damages prayed for in the complaint. He forthwith contacted both the appellant's personal attorney and the attorney for appellant's malpractice insurer, requesting that they consent to an alteration in the erroneous caption by changing Richland County Court to Common Pleas Court and that the case be filed in the latter court. This request was denied. Respondent's attorney then obtained an *ex parte* order from the Richland County Court on April 21, 1976 dismissing the action for want of jurisdiction. A copy of the order of dismissal was mailed to the attorney for appellant's malpractice insurer on the same date.

A second summons and complaint, identical in every respect to the previous pleadings except the portion of the caption designating the trial forum, was served upon appellant on April 23, 1976,[2] and filed in the Court of Common Pleas for Richland County. When no answer, appearance, or other pleading was served within the statutory period, an affidavit of default was filed on June 4, 1976. The case was heard on September 7, 1977, without a jury, with judgment being rendered for $80,000 actual and $20,000 punitive damages against appellant.

Appellant first filed a motion on September 27, 1977 to vacate the default judgment on the ground of lack of service. After a hearing, at which appellant took the emphatic posi-

---

[1] The intestate initially consulted appellant concerning a pain which he diagnosed as being caused by pelvic inflammatory disease. She was admitted to Richland Memorial Hospital for the treatment of that condition and was discharged from the hospital two weeks later. Eighteen hours after such discharge, the intestate died at home.

[2] Although appellant denies this service was made upon him, this issue has been conclusively resolved in a prior action adverse to his contention.

tion that he had never been served, the lower court denied the motion. No appeal was perfected from this ruling.

On November 15, 1977 appellant, again attempted to vacate the default judgment, proceeding under section 15-27-130 on the basis of excusable neglect, inadvertence, or surprise. The lower court denied his motion. This appeal followed.

The lower court's determination of motions brought under section 15-27-130 will not be disturbed absent a clear showing of an abuse of discretion. *Thermal Insulation Co., Inc. v. Town & Campus, Inc.,* 271 S. C. 478, 248 S. E. (2d) 310 (1978). An abuse of discretion arises in cases in which the judge issuing the order was controlled by some error of law or where the order, based upon factual, as distinguished from legal, conclusions, is without evidentiary support. *Id.* The party seeking relief under section 15-27-130 must show that the judgment was taken against him through his mistake, inadvertence, surprise, or excusable neglect and that he had a meritorious defense. *McInerny v. Toler,* 260 S. C. 382, 196 S. E. (2d) 122 (1973).

Appellant contends that the two sets of summons and complaints were so similar that it constituted excusable neglect for him to conclude that the second summons and complaint had been taken care of by reason of the fact that he had placed the first set of pleadings in the hands of his attorneys. Appellant's testimony concerning the reaction which he supposedly had when served with the second set of suit papers is necessarily diminished by his continued assertion that he has no personal recollection of ever having been served with such papers. His testimony on this vital issue is, therefore, hypothetical and speculative.

This court has passed upon several cases involving the attempt to vacate default judgments on the ground of a defendant's failure to appreciate the importance of pleadings served upon him. In *McInerny v. Toler, supra,* the court re-

fused to reopen a judgment where, after reading the complaint, the defendant thought the plaintiff was in error and had inadvertently brought the action against him, because he assumed he had no interest in the lease in question since he had assigned his interest to his children. In *DeNault v. Holloway Builders, Inc.,* 271 S. C. 468, 248 S. E. (2d) 265 (1978) the defendant asserted excusable neglect in failing to attend to a summons and complaint because he was served with two complaints within the same week and was confused as to the respective dates of service. This court affirmed the lower court's refusal to vacate the judgment. In *Thermal Insulation Co., Inc. v. Town & Campus, Inc., supra,* this court declined to reopen a default judgment where two similar suits were served on the defendants and only one was delivered to the attorney for attention, it being "mistakenly assumed" that both had been delivered to the attorney. In none of the cases cited above was there evidence of any expectation that the lawsuits against the defendants would be served. In the instant case, both appellant's personal attorney and the attorney for the malpractice insurer were alert to the fact that a second action would probably be forthcoming.[3]

Moreover, unlike the recent case of *Thompson v. Wilder,* S. C., 253 S. E. (2d) 108 (1979),[4] no affirmative action was undertaken by appellant to meet the statutorily specified time limit. Appellant did nothing in reference to the second set of pleadings to ascertain if he had a duty relating thereto. He made no communication of any nature to his attorneys concerning the second service.

[3] Counsel for the malpractice insurer testified that he called appellant's personal counsel both after respondent's attorney requested an amendment to the original suit and again after he had received a copy of the order of dismissal of the county court suit. On both occasions he advised appellant's personal attorney that they might well expect suit to subsequenlty be brought in the court of common pleas.

[4] *Thompson v. Wilder, supra,* may also be distinguished from the instant case by virtue of the fact that the confusion was caused in that case through the service of two summons (complaints not served). This court has noted previously that a summons (complaint not served) is a poor vehicle for alerting a layman to what is involved. *Jolley v. Jolly,* 265 S. C. 594, 220 S. E. (2d) 882 (1975).

Appellant relies heavily on the fact that the original suit was dismissed by the procurement of an *ex parte* order. While we have condemned the use of the *ex parte* order except in rare instances, *Herring v. Credit Bureau of Columbia*, 272 S. C. 368, 252 S. E. (2d) 123 (1979), we are unable to discern any prejudice resulting to appellant by its use in this case. The attorneys for appellant were apparently aware of the order of dismissal at the time the second suit was filed on April 23, 1976 since a copy of the order was forwarded by respondent's attorney through the mail to the attorney for the insurance carrier on April 21, 1976, who immediately called appellant's personal attorney and informed him of its receipt. We are, then, unable to hold, under the circumstances here presented, that the *ex parte* order was a proximate cause of appellant's failure to give attention to the suit papers. There can be no serious contention that the order of dismissal should not have been granted, the jurisdictional defect appearing on the face of the complaint. The attorney for the malpractice insurer testified that he had in fact been prepared to make a special appearance to quash the service of the summons and complaint for lack of jurisdiction if the *ex parte* order had not been obtained.

The evidence in this record is insufficient to support a finding of excusable neglect when viewed in the light of our prior decisions. Having found that appellant has not presented sufficient evidence to support a finding of excusable neglect, we do not reach the issue of whether a meritorious defense exists.

We find no abuse of discretion on the part of the lower court in denying the motion of appellant.

Affirmed.

LEWIS, C. J., and NESS, J., concur.

LITTLEJOHN and GREGORY, JJ., dissent.

LITTLEJOHN, Justice (dissenting):

I respectfully dissent and would reverse the order wherein the judge refused to vacate the default judgment.

The issue before this court is whether the lower court abused its discretion. An abuse of discretion is an error of law. The defendant asserts that his failure to respond was due to inadvertence, excusable neglect, or surprise, and that he is entitled to have the judgment vacated under § 15-27-130, *Code of Laws of South Carolina* (1976). I agree. Under the facts of this case, I would rule that there has been an abuse of discretion amounting to an error of law.

This court has said:

"In determining whether there has been an abuse of discretion all of the facts and circumstances must be evaluated. If the requirements to vacate a judgment are met the judgment should be opened and the defendant permitted to answer." *Edwards v. Ferguson,* 254 S. C. 278, 175 S. E. (2d) 224, 226 (1970).

An examination of all of the facts and circumstances of this case leads me to the conclusion that defendant's failure to respond was due to excusable neglect, initiated by error on the part of plaintiff's counsel in designating the wrong court. Except for this error, the dilemma we nurse could not have occurred.

Counsel for the insurance carrier is not to be faulted for refusing to agree to the requested amendment to the summons and complaint, the effect of which would be to transfer jurisdiction. Such consent might conceivably have deprived his client, the insurance company, of some defense under the terms of the insuring contract.

The *ex parte* order, having been sought without notice to interested parties appearing, was improperly procured. This court has frowned upon such orders in several opinions heretofore. Failure to notify counsel of the application and failure to provide the defendant's personal attorney with a copy of the order, set the stage for the misunderstanding which has resulted. Even if it be conceded that plaintiff's counsel was as a matter of right entitled to have the action dismissed,

the fact remains that opposing counsel were entitled to be notified so that they might keep abreast of that which was taking place. The majority opinion submits that ". . . we are unable to discern any prejudice resulting to appellant [defendant] by its [*ex parte* order] use in this case." I am not at all sure that this is true. Defendant avers that he ". . . never received notice nor a copy of the order of the dismissal . . .." At the time of service of the second summons and complaint, he had reason to believe the first action was still active. We can only speculate as to what might have occurred had the matter been handled in the usual fashion. It is understandable that a layperson, unfamiliar with the technicalities of the law and the court and unaware of the dismissal of the first action, might have conceived the second set of papers to be duplicates. He had properly delivered copies of the first papers to both his own counsel and to counsel for the insurance carrier.

This court has held that § 15-27-130 should be liberally construed to see that justice is promoted and to strive for disposition of cases on their merits. *Edwards v. Ferguson, supra,* 175 S. E. (2d) at 226.

In furtherance of justice, this court has made efforts to protect laymen from default judgments caused by confusing pleadings. We have also attempted to eliminate injustices caused by confusion arising out of the use of summons (complaint not served), a confusing legal document.

Under the majority opinion, plaintiff benefits from his initial error of bringing an action in a court without jurisdiction. Such was a cause of the confusion, without which the case would have been disposed of in the normal fashion on its merits.

The facts here are akin to those in *Thompson v. Wilder,* S. C., 253 S. E. (2d) 108 (1979), where we said:

"In our view respondent's prosecution of these two identical actions against essentially the same defendants, coupled

with the use of identical Summons Complaint Not Served was *sufficiently irregular* to confuse the appellants." (Emphasis added.)

Here, as there, the resulting confusion led to excusable neglect by the defendant and warrants vacation of the judgment.

In *Howard v. Holiday Inns,* 271 S. C. 238, 246 S. E. (2d) 880 (1978), we attempted to soften the harsh impact of default judgments by holding that when there has been an appearance but no answer or demurrer filed, the defendant is entitled to participate in the ascertainment of damages by cross-examining plaintiff's witnesses and objecting to evidence. We held that one in default concedes liability but does not concede the amount of liability in a tort action. Here, both defendant's counsel and his insurance carrier's counsel had made an appearance as relates to the first summons and complaint. Counsel for the plaintiff was well aware that both personal counsel and insurance counsel had been employed to defend the claim. The ruling of the lower court may have the effect of relieving the insurance carrier of liability. While it is true that the defending attorneys had not, technically speaking, made an appearance as relates to the second summons and complaint, I think that the facts bring the case within the spirit, if not the letter, of our ruling in *Howard.* A strong argument can be made for the proposition that defendants should be notified of the default hearing in every instance, such that the court would have the benefit of an adversary proceeding as relates to the assessment of damages. *Howard* did not go that far in its ruling. Such an expansion of the rule would tend to eliminate many of the injustices arising out of default judgments with which both the lower court and this court are regularly plagued. Even if the defendant is not permitted to answer, he should be allowed to defend and/or mitigate the damages as permitted by *Howard.*

While the majority does not reach the issue of whether a meritorious defense exists, the record abundantly shows that

the defendant has made out a case on the "meritorious defense" issue. The order of the lower court should be reversed, the defendant permitted to answer, and the case should be tried on its merits in the conventional fashion.

GREGORY, J., concurs.