John DOSDALL, Respondent,

v.

Richard D. SMITH, d.b.a. Smitty's Spray Service, defendant and third party plaintiff, Appellant,

v.

Del GLANZER, d.b.a. Glanzer Consulting Service, third party defendant, Ciba-Geigy Corporation, Respondents.

No. C6–87–639.

Court of Appeals of Minnesota.

Nov. 17, 1987.

Gerald Seibel, Fluegel, Anderson, Dalager, Dalager & Seibel, Chtd., Morris, for John Dosdall.

Robert V. Espeset, Blomquist & Espeset, Minneapolis, for Richard D. Smith.

Del Glanzer, pro se.

Mary H. Terzino, Faegre & Benson, Minneapolis, for Ciba-Geigy Corp.

Heard, considered and decided by PARKER, P.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

PARKER, Judge.

Respondent John Dosdall sued appellant Richard Smith, alleging negligent application of the herbicide EVIK to Dosdall's corn crop, resulting in crop damage. Smith defended, claiming negligence and assumption of risk by Dosdall or Dosdall's agent, and brought third-party claims against Del Glanzer, a consultant hired by Dosdall, and Ciba-Geigy, manufacturer of EVIK. Smith claimed Glanzer negligently recommended EVIK and that Ciba-Geigy was negligent in labeling the product and in failing to give proper advice.

The trial court ruled the label was unambiguous as a matter of law, excluded expert and other testimony offered by Smith, barred arguments to the jury on the label's adequacy, and dismissed Smith's negligence claim. The court also refused to give Smith's requested jury instruction on agency. The jury found the defendant and both third-party defendants negligent, attributing 41 percent of the fault to Smith, 45 percent to Glanzer and 14 percent to Ciba-Geigy. The jury found the total damages to be $58,650, and judgment was entered against Smith for that sum, with contribution of $26,392.50 from Glanzer and $9,211 from Ciba-Geigy. We affirm in part and reverse and remand in part.

## FACTS

In late June 1983 John Dosdall's corn fields were infested with wild prosso millet, a weed that causes severe damage if not controlled. Del Glanzer, hired by Dosdall to perform soil analysis and advise on increased production, recommended the use of EVIK 80W, a burn-down herbicide that kills on contact. Because the corn was three to four feet tall, Glanzer suggested that a custom applicator be used and contacted Richard Smith, a licensed applicator with the equipment needed to spray the crop. Smith agreed to do the job.

Glanzer then contacted Sue Warner, a Ciba-Geigy sales representative. Warner gave Glanzer several "fact sheets" containing information on the use of EVIK. Glanzer did not read the fact sheets before delivering one to Smith, who did read it. A "Precaution" section reads:

> EVIK should not be applied within three weeks of tasseling to avoid possible yield reductions.

EVIK package labels state:

> Precaution: Do not spray over top of corn or injury will occur. Do not apply within three weeks of tasseling.

Tasseling is the corn's pollination process. Smith testified that he thought the warning meant not to spray in the three week period *after* tasseling. Glanzer testified that Warner mentioned no precautions during their conversation, but she disputed this testimony.

Smith purchased and applied the EVIK in mid-July, without reading the package label. Both Smith and Glanzer testified that a small area of corn was tasseling when the fields were sprayed. The majority of the corn tasseled about ten days after spraying.

At harvest, Dosdall discovered a severe yield reduction in the sprayed fields. Ciba-Geigy representative James Miller informed Dosdall, Smith and Glanzer that EVIK had caused the damage and that the warning meant not to apply EVIK in the three week period *before* tasseling.

### ISSUES

1. Was the evidence presented at trial sufficient to support the jury's verdict of negligence by Smith, Glanzer and Ciba-Geigy?

2. Did the trial court err in not giving the jury the requested instruction on agency?

3. Did the trial court err in ruling, as a matter of law, that the label was unambiguous, in excluding Smith's proffered expert testimony and evidence showing a conflict among Ciba-Geigy representatives on the label's meaning, and in dismissing Smith's negligent labeling claim?

### DISCUSSION

### I

█ Smith testified that he saw some corn tasseling at the time of spraying, but was not concerned about it. He also did not read the package label, although he read the fact sheet. A licensed applicator is required to know the properties and dangers of the chemicals he uses. From this, a jury could reasonably infer negligence by Smith, regardless of his interpretation of the label precautions.

█ Glanzer recommended EVIK without knowing much about it and without reading the fact sheet when he had the opportunity to do so. As a professional consultant, Glanzer had a duty to know the possible consequences of his advice.

█ After dismissal of the negligent labeling claim, the only basis for finding negligence by Ciba-Geigy was sales representative Warner's alleged failure to alert Glanzer to the dangers of EVIK. The conflict of testimony between Warner and Glanzer is a question properly left for jury resolution. With sales representative Mil-

ler's testimony that he would warn anyone of the dangers whenever EVIK's potential use was discussed, the jury could conclude that Warner's failure to do so was negligent.

### II

█ The testimony at trial did not support a finding that Glanzer was Smith's agent. To establish agency, a claimant must show that the principal had the right to control the agent's conduct in the performance of his duty. *Jenson v. Touche Ross & Co.*, 335 N.W.2d 720, 729 (Minn. 1983); *Vieths v. Ripley*, 295 N.W.2d 659, 664 (Minn.1980). Although Dosdall retained the right to make the final decision, he hired Glanzer to perform certain services which included making recommendations to protect the corn crop. No evidence was introduced at trial to establish that Dosdall had the right to control Glanzer's conduct in the performance of these duties.

Other considerations in determining agency include whether the agent is in a distinct occupation or business, whether the type of work done is usually performed by a specialist without supervision, the skill required, and the parties' intent. *Castner v. Christgau*, 222 Minn. 61, 66–67, 24 N.W. 2d 228, 231 (1946). Glanzer has special skills, is in a distinct business, and worked without direct supervision. The trial court correctly declined to give the jury the instruction on agency.

### III

The trial court's ruling on the label's ambiguity appears to have confused the application of contract and negligence principles. Although the original complaint included contract and UCC issues, the matter was ultimately tried on a negligence theory. Even assuming the language of the label to be unambiguous, the allegation was inadequate labeling, an issue different from ambiguity.

█ When consequences are direct and foreseeable, a duty to warn is imposed by law. *Germann v. F.L. Smithe Machine Co.*, 395 N.W.2d 922, 924–25 (Minn.1986).

Furthermore, a manufacturer who gives a warning on a product assumes the duty of providing an *adequate* warning. *Johnson v. West Fargo Manufacturing Co.,* 255 Minn. 19, 24, 95 N.W.2d 497, 501 (1959); *see also Balder v. Haley,* 390 N.W.2d 855, 864 (Minn.Ct.App.1986), *rev'd on other grounds,* 399 N.W.2d 77 (Minn.1987).

A warning's adequacy, however, is a question of fact for the jury to decide.

> [I]ssues such as the *adequacy* of the warning, breach of duty and *causation* remain for jury resolution.

*Balder v. Haley,* 399 N.W.2d 77, 81 (Minn. 1987) (emphasis added); *see also Germann,* 395 N.W.2d at 924–25.

■ The court instructed the jury that the label was, as a matter of law, unambiguous, but did not tell the jury what the label meant, even though the parties were instructed that the court was ruling the label meant three weeks before *and* three weeks after tasseling. The trial court erred in not allowing Smith to present evidence and argue to the jury on the question of the warning's adequacy. The error was prejudicial, because the jury could have determined the label was inadequate and was a cause of the damage. The jury might then have apportioned percentages of fault differently.

Smith's expert witness would have testified that the label was inadequate because of its wording, size, location and lack of specificity on the results of misuse. Expert testimony is admissible at trial when it will "assist the trier of fact to understand the evidence or *to determine a fact in issue.*" Minn.R.Evid. 702 (emphasis added). The determination of when expert testimony will be helpful lies within the trial court's discretion and will be overruled only when abuse of discretion is shown. *Walton v. Jones,* 286 N.W.2d 710, 713 (Minn.1979); *Hyduke v. Grant,* 351 N.W.2d 675, 678 (Minn.Ct.App.1984). The trial court's various rulings removed the issue, and the exclusion, under those circumstances, was appropriate.

On remand, however, the label's adequacy will be a fact in issue, and the trial court should reconsider the helpfulness of expert testimony in assisting the jury in determining the label's adequacy and whether any inadequacy was a cause of the corn's damage. The trial court should also reconsider the relevance of the excluded evidence offered by Smith on Ciba–Geigy's process of reaching the final wording on the label and the ruling disallowing cross-examination by Smith of Ciba–Geigy representatives on what they thought the label to mean.

## DECISION

The evidence at trial was sufficient to support the jury's verict of negligence against Smith, Glanzer and Ciba-Geigy, and we affirm that portion of the trial court's finding and the judgment against Smith for $58,650.

The trial court erred in not allowing the parties to present evidence and argue the issue of negligent labeling. We order the judgment for contribution from the third-party defendants vacated and remand for proceedings to determine whether Ciba-Geigy was negligent in labeling, whether negligence in labeling was a cause of damage, and what percentage of fault should be assessed against each of the defendants.

Affirmed in part and reversed and remanded in part.